UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THEODORE PACHECO,          ) | 1:08-CV-01479 OWW JMD HC |
|                            ) | |
| Petitioner, ) | FINDING AND RECOMMENDATION |
|                            ) | REGARDING PETITION FOR WRIT OF |
| v.                         ) | HABEAS CORPUS |
|                            ) | |
| J.D. HARTLEY,              ) | |
|                            ) | |
| Respondent. ) | |
|                            ) | |

Theodore Pacheco ("Petitioner") is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a 1984 conviction in the Los Angeles County Superior Court. Petitioner pled guilty to second degree murder and received a sentence of fifteen years to life. (Pet. at 2).

Petitioner does not challenge his conviction in this action; rather, Petitioner challenges the denial of his parole by the California Board of Parole Hearings (the "Board"), whom he appeared before on August 31, 2006. (Answer at 1). Petitioner contends that the Board violated his constitutional rights when they denied him parole. (*See* Pet. Attach. 1, Mem. P. & A.).

Petitioner subsequently filed a petition for writ of habeas corpus with the Los Angeles County Superior Court challenging the Board's denial of parole. The Los Angeles County Superior

1 Court issued a reasoned opinion rejecting Petitioner's claims on August 10, 2007.  (*See* Answer Ex.
2 2).

3       Petitioner also filed petitions for writ of habeas corpus with the California Court of Appeal
4 and the California Supreme Court, which were summarily denied by the respective courts.  (*See*
5 Answer Exs. 3, 5).

6       On July 17, 2008, Petitioner filed the instant federal petition for writ of habeas corpus in the
7 Central District of California.  The petition was transferred to this Court on August 5, 2008.  (Court.
8 Docs. 3, 4).

9       Respondent filed a response to the petition on January 26, 2009.  Respondent admits that
10 Petitioner has exhausted his state remedies and that the instant petition is timely.  (Answer at 3).
11 Petitioner did not file a reply to the Respondent's answer.

12 **FACTUAL BACKGROUND**

13       The facts of the commitment offense were considered by the Board in determining whether
14 Petitioner was suitable for parol and are thus relevant to the Court's inquiry into whether the State
15 court's decision upholding the Board's decision was objectively unreasonable.  *See* Cal. Code Regs.,
16 tit. 15, § 2402(c)(1).  The Board incorporated into the record a summary of the offense which had
17 been taken from the Board Report, dated March 2006, which stated:

18-23 > On August 18th of 1984, [Petitioner] shot and killed Lincoln Godwin (Phonetic).  According to the Los Angeles County probation officer's report dated for February 28th of 1985, and the Los Angeles Police Department arrest report dated for August 20th 1984, [Petitioner] was the estranged husband of Yvonne Pacheco[;] she was residing at the couple's Vineyard Avenue with their children.  Victim Godwin was visiting the residence when [Petitioner] came by the residence. [Petitioner] saw Godwin, who fled to the bedroom to hide. [Petitioner] left the residence and subsequently returned a short time later with a shotgun. [Petitioner] shot through the bedroom door striking the victim in the side. [Petitioner] ordered the victim out fo the bedroom and the victim complied. [Petitioner] then shot the victim in the face and the victim died soon after.

24 (Pet. Ex. A, Transcript of Parole Hearing, at 9-10).

25       The Board also asked Petitioner to relate his version of events, in which he revealed that he
26 found the victim hiding in the bedroom of his estranged wife when Petitioner went to pick up his
27 children.  (Id. at 10).  Petitioner then rushed downstairs and grabbed a shotgun from the basement of
28 the home.  (Id. at 13).  When Petitioner went back upstairs, the door of the bedroom was closed and

Petitioner claims he tried to shoot the latch off the door. (Id). Petitioner stated that the victim them emerged from the bedroom, holding Petitioner's daughter in his arms. (Id. at 15). Petitioner then claimed "that's when the gun hit [the victim] in the head and he got shot in the head." (Id). When pressed by the Board, Petitioner admitted that he shot the victim in the head. (Id).

## DISCUSSION

**I.     Jurisdiction**

A person in custody pursuant to the judgment of a State court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution stemming from the Board's denial of parole. Petitioner initiated this action and the denial of parole occurred when Petitioner was incarcerated at Avenal State Prison, which is located in Kings County. (Pet. at 2). As Kings County falls within this judicial district, 28 U.S.C. § 84(b), the Court has jurisdiction over Petitioner's application for writ of habeas corpus. *See* 28 U.S.C. § 2241(d) (vesting concurrent jurisdiction over application for writ of habeas corpus to the district court where the petitioner is currently in custody or the district court in which a State court convicted and sentenced Petitioner if the State "contains two or more Federal judicial districts").

**II.    ADEPA Standard of Review**

All petitions for writ of habeas corpus filed after 1996 are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted by Congress on April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by Lindh*, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)). The instant petition was filed in 2008 and is consequently governed by AEDPA's provisions. *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003). While Petitioner does not challenge his underlying conviction, the fact that Petitioner's custody arises from a State court judgment renders section 2254 the exclusive vehicle for Petitioner's habeas petition. *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-1127

(9th Cir. 2006) (quoting *White v. Lambert*, 370 F.3d 1002, 1006 (9th Cir. 2004) in holding that § 2254 is the exclusive vehicle for a habeas petitioner in custody pursuant to a State court judgment even though he is challenging the denial of his parole).

Under AEDPA, a petition for habeas corpus "may be granted only if [Petitioner] demonstrates that the State court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)); *see also Lockyer*, 538 U.S. at 70-71.  As a threshold matter, this Court must "first decide what constitutes 'clearly established federal law, as determined by the Supreme Court of the United States.'" *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly established federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* (quoting *Williams*, 592 U.S. at 412). "In other words, 'clearly established federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the State court renders its decision." *Id.*

Finally, this Court must consider whether the State court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law." *Lockyer*, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)).  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the State court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the State court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the State court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.  "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant State court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly

established law was "objectively unreasonable." *Id.* at 409.  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a State court decision is objectively unreasonable. *See Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003); *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999).

Petitioner bears the burden of establishing that the State court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).  AEDPA requires that a federal habeas court give considerable deference to State court's decisions. The State court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1).  Furthermore, a federal habeas court is bound by a State's interpretation of its own laws. *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

Thus, the initial step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005).  Where more than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last reasoned decision. *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order).  The Ninth Circuit has further stated that where it is undisputed that federal review is not barred by a State procedural ruling, "the question of which state court decision last 'explained' the reasons for judgement is therefore relevant only for purposes of determining whether the state court decision was 'contrary to' or an 'unreasonable application of' clearly established federal law." *Bailey v. Rae*, 339 F.3d 1107, 1112-1113 (9th Cir. 2003).  Thus, a federal habeas court looks through ambiguous or unexplained State court decisions to the last reasoned decision in order to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. *Id*.

Here, the Los Angeles County Superior Court, the California Court of Appeal, and the California Supreme Court all adjudicated Petitioner's claims. (*See* Answer Exs. 2, 4, 6).  As the California Court of Appeal and California Supreme Court issued summary denials of Petitioner's claims, the Court "look[s] through" those courts' decisions to the last reasoned decision; namely, that

of the Los Angeles County Superior Court.[1] *See Ylst v. Nunnemaker*, 501 U.S. at 804.

### III. Review of Petitioner's Claim

The dispositive inquiry before this Court is whether the last reasoned decision by the State court was an unreasonable application of clearly established federal law. *See Williams*, 529 U.S. at 407-408 (explaining that where there is no factually on-point Supreme Court case, the State court's determination is subject to the unreasonable application clause of 28 U.S.C. § 2254). Here, Petitioner raises five grounds for relief that all relate to violations of his due process rights resulting from the Board's denial of parole.

#### *A. Grounds One to Four: Some Evidence Supporting Board's Denial*

Petitioner's first four grounds for relief are based on the alleged lack of evidence supporting the Board's decision, including the claim that Board may not rely solely on Petitioner's commitment offense as the basis for denying him parole. As all four claims are interrelated and address the same issues, they are discussed together in this section.

##### *1. Legal Standard for Denial of Parole*

"We analyze a due process claim in two steps. '[T]he first asks whether there exist a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Sass*, 461 F.3d at 1127. The United States Constitution does not, by itself, create a protected liberty interest in a parole date. *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981).

Respondent argues that Petitioner does not have a liberty interest in parole despite recognizing the existence of Ninth Circuit authority to the contrary. (Answer at 3). The Ninth Circuit has held that a prisoner possess a liberty interest in parole where mandatory language in a State's statutory scheme for parole creates a presumption "that parole release will be granted when or unless certain designated findings are made, and thereby give rise to a constitutional liberty

---

[1] In denying Petitioner's application for relief, the California Court of Appeal wrote that, "Petitioner has failed ot state sufficient facts or legal authority demonstrating entitlement to the relief requested. There is "some evidence" to support the findings of the Board of Parole Hearings. (See *In re Dannenberg*(2005) 34 Cal.4th 1061, 1071)." As the appellate court's decision fails to explain or address what constitutes "some evidence," the Courts deems the decision ambiguous and looks through the decision to the last reasoned decision–that of the Los Angeles County Superior Court.

interest.'" *McQuillion v. Duncan*, 306 F.3d 895, 901 (9th Cir. 2002) (quoting *Greenholtz v. Inmates of Nebraska Penal*, 442 U.S. 1, 12 (1979) in holding that California's parole scheme gives rise to a cognizable liberty interest in release on parole). California Penal Code section 3041 contains the requisite mandatory language,[2] thus vesting California prisoners "whose sentence provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause." *Irons*, 505 F.3d at 850; *see also McQuillion*, 306 F.3d at 903; *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003). Consequently, the Court finds that Petitioner has a protected liberty interest in a parole date.

A finding that a liberty interest exists does not end the Court's inquiry as the Due Process Clause is not violated where the denial of a petitioner's liberty interests follows the State's observance of certain procedural safeguards. *See Greenholtz*, 442 U.S. at 12. Respondent contends that due process merely entitles Petitioner the right to be heard, advance notice of the hearing, and for the Board to state their reasons for denial. (Answer at 3). This contention is based on the argument that the "some evidence" standard does not constitute clearly established federal law and is not applicable to parole denials. (Id. at 5-6). Respondent is correct in one respect; a parole release determination is not subject to all of the due process protections of an adversarial proceeding. *See Pedro v. Oregon Parole Board*, 825 F.2d 1396, 1398-99 (9th Cir. 1987). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a Petitioner in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." *Id*. at 1399; *Jancsek v. Oregon Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987). Thus, an inmate is

---

[2]The Ninth Circuit's line of cases finding a liberty interest existed from the mandatory language of the statute is derived from *Greenholtz*, which Respondent argues has been curtailed by the United States Supreme Court's decision in *Sandin v. Conner*, 515 U.S. 472 (1995). The Court notes that application of the *Sandin* rule would lead to the same conclusion as the denial of parole would fall within an "atypical and significant hardship" in light of the fact that parole is the rule rather than the exception. *See In re Smith*, 114 Cal.App.4th 343, 351 (Cal. Ct. App. 2003) (stating, "Under [California Penal Code] section 3041, subdivision (a), release on parole is the rule, rather than the exception"). More importantly, the Ninth Circuit has "since held that *Sandin*'s holding was limited to 'the separate but related question of when due process liberty interests are created by internal prison regulations.' [citation] Accordingly, we continue to apply the 'mandatory language' rule set forth in *Greenholtz* and *Allen* in order to determine whether [the state's] statutory scheme creates a liberty interest in early release into community custody." *Carver v. Lehman*, 558 F.3d 869, 873 n. 5 (9th Cir. 2009) (citing *McQuillion*, 306 F.3d at 902-03 and *Sass*, 461 F.3d at 1127 n. 3 in applying mandatory language rule to find no liberty interest for early release into community under Washington statute).

entitled to receive advance written notice of a hearing, be afforded an "opportunity to be heard" and told why "he falls short of qualifying for parole." *Greenholtz*, 442 U.S. at 16; *see also Pedro*, 825 F.2d at 1399. Here, the Court notes that Petitioner does not allege that she was deprived of any of these procedural safeguards.

However, the Ninth Circuit has consistently recognized that a prisoner's due process rights are implicated where there is no evidence to support the denial of parole. *Irons*, 505 F.3d at 851; *see also Sass*, 461 F.3d at 1128-1129. "In *Superintendent, Mass. Correc. Inst. v. Hill* [472 U.S. 445 (1985)] the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by some evidence in the record.'" *Sass*, 461 F.3d at 1128 (citations omitted). The Ninth Circuit has further held that the same standard of "some evidence" that applies to the revocation of good time also extends to parole determinations and that this same standard of judicial review applies to habeas petitions regarding parole denials. *Irons*, 505 F.3d at 851; *Sass*, 461 F.3d at 1128-1129. This evidentiary standard prevents arbitrary deprivations of the prisoner's liberty interest without imposing undue administrative burdens or threatening institutional interests. *Hill*, 472 U.S. at 455. While Ninth Circuit authority is non-binding for AEDPA purposes, the Court finds the rationale espoused by the Ninth Circuit in *Irons*, *Sass*, and *Biggs* persuasive on this point; thus, the Court finds that the "some evidence" standard is applicable to Petitioner's denial of parole.

The inquiry of "whether a state parole board's suitability determination was supported by 'some evidence'" is framed by the California statutes and regulations governing parole suitability. *Irons*, 505 F.3d at 851; *see Briggs*, 334 F.3d at 915. California law provides that after an eligible life prisoner has served the minimum term of confinement required by statute, the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole. Cal. Code Regs., tit. 15, § 2402(a); *see In re Dannenberg*, 34 Cal.4th at 1078, 1080. The Board decides

whether a prisoner is too dangerous to be suitable for parole by applying factors set forth in the California Code of Regulations. *See* Cal. Code Regs., tit. 15, § 2402; *Irons*, 505 F.3d at 851-852; *Biggs*, 334 F.3d at 915-916. The regulations permit consideration of "all relevant, reliable information available to the panel," and explicitly calls for consideration of "the base and other commitment offenses, including behavior before, during and after the crime." Cal. Code Regs., tit. 15, § 2402(b). Factors supporting a finding of unsuitability for parole include: the underlying offense was carried out in an "especially heinous, atrocious or cruel manner"; a record, prior to incarceration for the underlying offense, of violence; a history of unstable relationships with others; and serious misconduct while incarcerated. Cal. Code Regs., tit. 15, § 2402 (c); *see also In re Shaputis*, 44 Cal.4th 1241, 1257 n. 14 (Cal. 2008).

### 2. *State Court Decision*

After reviewing the record, the Court does not find that the Los Angles County Superior Court unreasonably applied the "some evidence" standard. *See* 28 U.S.C. § 2254(d)(1). The Superior Court concluded that there was some evidence to support the Board's finding that Petitione was unsuitable for parole as he continued to pose a risk of danger to society and public safety. (Answer Ex. 2 at 1). The Superior Court's conclusion rested primarily on several factors, including but not limited to the manner in which Petitioner committed the crime.

The Court recognizes that the California Supreme Court has held that even where the commitment offense was particularly egregious, reliance on this immutable factor *may* violate a petitioner's due process rights. *In re Lawrence*, 44 Cal.4th 1181, 1191 (Cal. 2008). In *Lawrence*, the California Supreme Court found that the intervening twenty-four years in which petitioner, now age sixty-one, had demonstrated, "extraordinary rehabilitative efforts specifically tailored to address the circumstances that led to her criminality, her insight into her past criminal behavior, her expressions of remorse, her realistic parole plans, the support of her family, and numerous institutional reports justifying parole" rendered "the unchanging factor of the gravity of petitioner's commitment offense" no longer probative of "her current threat to public safety, and thus provides no support for the Governor's conclusion that petitioner is unsuitable for parole at the present time." *Id*. at 1226.

1    However, Petitioner's case is materially distinguishable from *Lawrence* as there were
2 additional factors relied upon by the Board, and as noted by the Los Angeles Superior Court in its
3 decision. A discipline-free record while incarcerated does not automatically render the commitment
4 offense unpredictive of current dangerousness. *Id*. (citing *Lawrence*'s companion case, *In re*
5 *Shaputis*, 44 Cal.4th 1241, 1259-1260 (Cal. 2008). In *Shaputis*, 44 Cal.4th at 1259-1260, a lack of
6 insight into the commitment offense rendered the aggravating factor of the crime probative of the
7 inmate's current dangerousness despite his discipline-free record while incarcerated. *Id*. As noted
8 by the Los Angeles County Superior Court, the Board relied on the following factors in finding
9 Petitioner posed a current danger to society: (1) the commitment offense was committed in a cruel,
10 callous, and dispassionate manner; (2) Petitioner's previous history of assaultive behavior; (3)
11 Petitioner's history of tumultuous and unstable relationships; and (4) the unfavorable psychological
12 evaluations. (Answer Ex. 2; Pet. Ex. A at 92-95).

13    The Court notes that the "some evidence standard is minimal, and assures that 'the record is
14 not so devoid of evidence that the findings of the disciplinary board were without support or
15 otherwise arbitrary.'" *See Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457). Here, such
16 evidence consists of the unfavorable psychological evaluations which the Los Angeles Superior
17 Court pointed to as demonstrating that Petitioner did not currently understand the nature and
18 magnitude of his crime. The psychological evaluations, as read into the record, stated that Petitioner
19 was not forthcoming about his crime and had failed to come to terms with the crime. (Pet. Ex. A at
20 46). The evaluation further noted that Petitioner had attempted to rationalize his crime without
21 considering the effect of the crime on its other victims–namely his wife and children who were
22 present at the crime scene when the killing took place. (Id. at 47). The evaluation also opined that
23 Petitioner demonstrated an inability to express empathy and a detachment from his emotions. (Id. at
24 48). More importantly, the psychological evaluation stated that Petitioner demonstrated the capacity
25 to be quite violent. (Id. at 47). The Board also based its conclusion regarding Petitioner's inability
26 to come to terms with his wrongdoings on Petitioner's inconsistent versions of the crime and his
27 previous violent altercation with his wife. (Id. at 20-21, 66-69, 95). Failure to come to terms with
28 the crime and attempting to rationalize the crime bears a rational nexus to current dangerousness as it

demonstrates that Petitioner has yet to resolve the underlying factors that lead him to commit the crime.  These factors, similarly to the lack insight displayed in *Shaputis*, provide a permissible and sufficient basis, combined with the additional factors cited by the Los Angeles Superior Court, for finding that Petitioner was currently dangerous.  Thus, the Court finds that the Los Angeles Superior Court did not unreasonable apply the "some evidence" standard and Petitioner is not entitled to habeas relief on this ground.

      *B.*      *Ground Five: Application of Matrix*

In his fifth claim for relief, Petitioner contends that the Board's failure to apply the matrix pursuant to Title 15 of California Code of Regulation section 2403(c), violated his right to due process of the law as guaranteed in the federal constitution.  Section 2403(c) requires the setting of a base term pursuant to a matrix of base terms.  The Court finds that Petitioner's claim does not state a grounds for relief as California's regulations clearly establish that the setting of a base term under 2403(c) occurs after the initial determination that Petitioner is suitable for parole.  *See Murphy v. Expinoza*, 401 F.supp.2d 1048, 1054 (C.D. Cal. 2005) (citing *In re Danneberg*, 34 Cal.4th 1061, 1078 (Cal. 2005) and Cal. Code Regs., tit. 15, § 2403(a) in stating, "absent a determination of parole suitability by the BPT, there is no 'base term' [citation].  Thus, petitioner's ongoing detention does not deprive petitioner of due process of law").  As Petitioner has no due process right to the application of the matrix term prior to a finding that he is suitable for parole, he is foreclosed from obtaining habeas corpus relief on this ground.

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to

1 Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and
2 filed within ten (10) *court* days (plus three days if served by mail) after service of the objections.
3 The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The
4 parties are advised that failure to file objections within the specified time may waive the right to
5 appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

7 IT IS SO ORDERED.

8 **Dated:   December 22, 2009**          **/s/ John M. Dixon**
                                           UNITED STATES MAGISTRATE JUDGE